## LULA RUSS v. J. T. HARPER.

(Filed 1 November, 1911.)

1. **Master and Servant—Safe Place to Work—Safe Appliances— Duty of Master—Special Care—Negligence—Proximate Cause —Damages.**

   In the course of plaintiff's employment at defendant's laundry she was required to take a heavy basket of wet clothes on the third floor of the building, hoisted there through a shaft. The handle of the basket was a short rope with iron hooks at the end, caught in loops at either side of the basket, the middle of which was caught in a large hook at the end of the hoisting rope. The evidence of plaintiff tended to show that the hook on the end of the hoisting rope, by means of which the basket was suspended, was inefficient and insecure, and for this cause an end of the rope handle to the basket became unfastened and the hook thereat caught in her arm, cutting through the flesh; that the other end of the rope remained fastened to the basket and the weight of the basket pulled her against a post, where she remained until she was rescued by others: *Held*, the condition of the appliances was not such as required of the defendant no special care, preparation, or prevision, where the element of proximate cause is ordinarily lacking; and the evidence tended to show actionable negligence on defendant's part in respect to it.

2. **Master and Servant—Assumption of Risks—Contributory Negligence—Rule of Prudent Man.**

   When the doctrine of assumption of risks is relied on in defense to an action for damages arising from injuries received through defendant's negligence, for that the servant continued to work at the unsafe place and with the improper appliances furnished by the master, which had resulted in the injury complained of, the questions relating to it are determined on the principles applicable to the doctrine of contributory negligence, under the "rule of the prudent man."

3. **Master and Servant—Negligence—Conditional Release—Sealed Instrument—Questions for Jury.**

   A paper-writing, not under seal, set up in defense to an action by the master wherein damages for personal injuries arising from his negligence is sought by the servant, which contained certain conditions to be performed by the master before it is effective as a "release or discharge," raises the question as to the master's performance of those conditions, which is to be

determined by the jury when the evidence relating to it is conflicting; and in the absence of a seal the instrument could not be treated as a technical release.

4. **Master and Servant—Safe Place to Work—Safe Appliances— Former Conditions—Evidence.**

When the injury complained of was alleged to have been caused by the master's not furnishing for the use of the servant in performing his duties a proper appliance in fastening a basket to a hoisting rope, or that the hook on the rope was at the time wrapped around with a small string insufficient for the purpose, it is competent for a witness to testify that at this same place a year or two before the basket fell with her on two occasions, under the same conditions which in this case caused the injury.

BROWN, J., dissents; WALKER, J., concurs in the dissenting opinion.

APPEAL from *Peebles, J.,* at April Term, 1911, of NEW HANOVER.

Civil action to recover damages for physical injury caused by alleged negligence of defendant. There was evidence on the part of plaintiff tending to show that on 2 February, 1909, plaintiff, an employee of defendant, doing business as the Wilmington Steam Laundry, was injured by the negligence of defendant in failing to provide a safe place or appliance for doing her work and in failing to give same proper supervision. There was also testimony for plaintiff tending to show that the conditions contained in the paper-writing set up by defendant in lieu of her recovery had not been complied with, etc.

The defendant offered evidence tending to show there had been no negligence of defendant causing the injury, and resisted recovery further on the grounds that plaintiff had assumed the risk, was guilty of contributory negligence, and that any and all recovery was barred in the case by reason of an adjustment had between the parties, evidenced and contained in a paper-writing executed by plaintiff in terms as follows:

WILMINGTON, N. C.

In consideration of the fact that the Wilmington Steam Laundry will pay my doctor's and medicine bills and keep me on the pay-roll at my regular salary until I am pronounced able

to resume work, by the doctor, I do hereby forever release and discharge said Wilmington Steam Laundry from any and all claims, demands, actions, which I now have or may hereafter have claim against for any injuries that I received on 2 February, 1909.                    (Signed)        LULA RUSS.

LIZZIE RUSS,
CHARLES T. HARPER, } Witnesses.

Defendant claimed that said paper-writing was and should have the effect of a release of plaintiff's demand, and offered evidence tending to show that all conditions and stipulations appearing in the agreement had been fully complied with.

The jury rendered the following verdict:

1. Was the plaintiff injured by the negligence of the defendant in his (defendant's) failure to furnish safe elevator arrangement? Answer: Yes.

2. Was the plaintiff guilty of contributory negligence, as alleged? Answer: No.

3. Did the plaintiff assume the risk of the injury by her accepting employment and using the arrangement furnished her, as alleged by defendant? Answer: No.

4. Did the plaintiff execute the agreement or paper-writing offered in evidence by defendant, and did she receive her weekly pay and doctor's services under said agreement until the doctor determined her well and ready to return to work, in satisfaction of her claim for damages? Answer: No.

5. What damages, if any, is the plaintiff entitled to recover? Answer: $600 in addition to anything paid on account.

Judgment on the verdict, and defendant excepted and appealed.

*W. P. M. Turner, Rountree & Carr, and Herbert McClammy for plaintiff.*

*E. K. Bryan for defendant.*

HOKE, J., after stating the case: There was evidence tending to show that defendant was proprietor of a steam laundry, and in the ordinary progress of the work the wet clothes were placed in a large heavy basket, "large enough to lay a man's

shirt in full," and raised by a hoisting rope and pulley to the third floor, where it became plaintiff's duty as an employee to pull the basket from the elevator shaft to the floor, remove the clothes and give them to another employee to be placed in the drier. That the handle of the basket was a short rope with iron hooks at the ends. These hooks were caught in loops at either side of the basket and this short rope, at or about the middle, was hitched to a large hook at the end of the hoisting rope, where it was or should have held in place by some kind of proper and secure fastening so placed as to hold the basket steady and in its proper position. That on this occasion the basket was very heavy, having from 50 to 75 wet shirts in it, and as plaintiff in the usual way was endeavoring to pull the same to its landing place, from the absence of the fastening or because same was insufficient or insecure, the short rope slipped, tilting the basket, with the effect that one of the hooks at the side of the basket slipped from its hold, causing the basket to drop, and as it went down the shaft the hook at the loose end of the short rope caught in plaintiff's "right arm between the elbow and wrist, cutting through the flesh for a distance of about three inches and lodged in the bone and muscles of the wrist. That when the basket jerked forward and the hook fastened in plaintiff's arm, she fell with one shoulder against a post at the side of the shaft and in this way was kept from being jerked into the shaft; the basket filled with wet clothes hanging down the shaft, suspended by the rope, one large iron hook being caught in plaintiff's wrist and the other fastened to one end of the basket." That plaintiff remained in this position for a time, till relieved by the superintendent and another employee standing near.

The negligence alleged against defendant on the facts in evidence was in not having any proper fastening to hold the short rope in or on the large hook at the end of the hoisting rope; that the hook did not have sufficient curvature and in having an insufficient and insecure fastening to keep the short rope from slipping, rendering the basket liable to tilt, as it did in this instance, and thereby making plaintiff's work less secure.

Speaking to this question, the plaintiff, on being shown the appliance as at present operated, stated that it was not like it was at the time plaintiff received her injury. At that time, "The hook on the rope from the drum did not have any wire wrapped across the top of the hook when I worked at the laundry, and, in fact, had nothing on the hook to prevent the rope from flying off. Where the rope came together and wound upon the top hook, there was wrapped around it a small cotton string which kept the rope from slipping, and therefore held the basket in place. The rope you have here has a large twine string wrapped just under the hook, and this is interwoven in the two small ropes. This is entirely different from the way it was arranged when I was injured. When I was injured, the two large hooks which caught in the handles of the basket were sharp at the points, but since then they have been cut off. When the accident happened, I had caught hold of the basket by the side of it, as I had always done, to pull it from the shaft to the floor, and when I pulled it in, the small cotton cord around the center hook that held the rope in position, broke, which caused one end of the basket to fly up, and in doing so one hook was released, and that end of the rope jerked loose from the top hook."

There was evidence on part of defendant contradicting the portion of this above statement which tends to establish negligence on defendant's part; but on the testimony as quoted, the question of defendant's negligence under a proper charge was for the jury. It was not a case presenting ordinary conditions requiring no special care, preparation, or prevision, where the element of proximate cause is not infrequently lacking, as in *House v. R. R.,* 152 N. C., 397, and *Dunn v. R. R.,* 151 N. C., 313; but comes under that class of cases illustrated in *Hipp v. Fiber Co.,* 152 N. C., 745, and *Wade v. Contracting Co.,* 149 N. C., 177, etc.

The court was right, therefore, in submitting to the jury the issue as to defendant's negligence. We find no testimony tending to show contributory negligence by plaintiff, other than that which might arise by reason of her working on under the

circumstances as they existed, and this was not improperly submitted to the jury, under an issue as to assumption of risk. Whatever may be the ruling in other jurisdictions, it is now very well established in this State that this doctrine of assumption of risk, in its proper acceptation, does not apply to conditions caused or created by the employee's negligence, or, in such case, if it exists in name, it is to be determined on the principles applicable to contributory negligence. On this question, in *Bissell v. Lumber Co.,* 152 N. C., 124, the Court quotes with approval from Shearman and Redfield on Negligence, sec. 211, as follows: "The true rule, as nearly as it can be stated, is that a servant can recover for an injury suffered from defects due to the master's fault, of which he had notice, if under all the circumstances a servant of ordinary prudence, if acting with such prudence, would, under similar conditions, have continued the same work under the same risk"; and this statement has been approved in numerous decisions of the Court, as in *Norris v. Holt-Morgan Mills,* 154 N. C., 474; *Turner v. Lumber Co.,* 140 N. C., 475; *Pressly v. Yarn Mills,* 138 N. C., 410.

In *Turner's case, Associate Justice Brown* states the doctrine we are considering, as follows: "His Honor instructed the jury that when the plaintiff went on the log car for the purpose of riding, he assumed the risk of all the dangers incident to riding on a log train. As a general statement of the law, this proposition is correct; but it does not go far enough, and was liable to mislead the jury. The judge should have further stated that the plaintiff assumed no risk which was incurred by reason of a defective car. There was evidence tending to prove that one of the standards used to hold the logs securely in place was gone, and there was no evidence that the plaintiff was apprised of the danger liable to result when he mounted the loaded car. Inasmuch as it was the master's duty (he having undertaken it according to the plaintiff's contention) to furnish his laborers transportation on his log train to and from the 'quarters,' it was his further duty to see that such transportation was rendered as reasonably safe as the character of it would admit. While the plaintiff assumed the risks incident to riding on

loaded log cars, he did not assume any risk resulting from a defective car. *Hicks v. Manufacturing Co.,* 138 N. C., 319; *Pressly v. Yarn Mills, ibid.,* 410. If the plaintiff knew that the standard was gone when he mounted the loaded log car, and if in consequence thereof the danger to himself was so obvious that no man of ordinary prudence would have ridden on it, then the plaintiff did assume the risk and would be guilty of such contributory negligence as would bar a recovery." This being the doctrine as it obtains with us, on the facts in evidence, the court committed no error to defendant's prejudice in submitting the question of assumption of risk to the jury. See *Hamilton v. Lumber Co., post,* 519.

On the 4th issue the paper-writing relied on by defendant could not be treated as a technical release, for lack of a seal. *Redmond v. Coffin,* 17 N. C., 441; *Smithwick v. Ward,* 52 N. C., 64; Clark on Contracts, p. 491. But whether termed a release, a compromise, or accord and satisfaction, it purports on its face to be an adjustment on mutually dependent conditions, and a breach on the part of defendant having been established by the verdict, the plaintiff is remitted to his original rights. *Wacksmuth v. Relief Dept.,* present term;* *Wildes v. Nicholson,* 154 N. C., 590; *City of Memphis v. Brown,* 20 Wall., 289; *Noe v. Christian,* 51 N. Y., 270; 1 A. and E. Enc. (2 Ed.), p. 422, etc.

There was also objection that Minnie Pickett, a witness for plaintiff, was allowed to testify that when she worked at this same place a year or two before, the basket fell with her on two occasions; that the small string, wrapped around the short rope just where the same was fastened to the hook on the long rope, broke, causing the basket to drop to the bottom floor. The conditions appear to be the same and the evidence, tending, as it did, to show that this was a dangerous contrivance, would seem to be a relevant circumstance, under *Blevins v. Cotton Mills,* 150 N. C., 493, and cases of like kind.

There is no reversible error, and the judgment in plaintiff's favor is affirmed.

No error.

---

*The Relief Department cases will be found together in the next forthcoming voulme, 157.

KIME *v.* R. R.

BROWN, J., dissenting: I am of opinion that upon all the evidence the giving way of the fastening which held one side of the basket was an accident which no reasonable care or human foresight can guard against, and that the defendant should not justly be held liable for the consequences.

MR. JUSTICE WALKER concurs in this opinion.